**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 98-427-CR-KING/GARBER

UNITED STATES OF AMERICA,

>    Plaintiff,

v.

LUIS ADEL BORDON,

>    Defendant.

_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on Defendant Luis Adel Bordon's ("Bordon") Motion to

Vacate, Set Aside, and Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 285], pursuant to an

Order of Reference from the Honorable James Lawrence King, United States District Judge.  On

January 23, 2007, the undersigned held an evidentiary hearing regarding this matter.  For the reasons

set forth below, it is respectfully recommended that the Court DENY Bordon's § 2255 Motion.

**BACKGROUND**

In June of 1998, Defendant Bordon and his two sons were convicted in this Court of one

count of illegal gambling and one count of conspiracy to conduct financial transactions.  *See United

States v. Bordon*, 421 F.3d 1202, 1203-04 (11th Cir. 2005), *rehearing* en banc *denied*, 172 Fed.

Appx. 993 (11th Cir. 2006) (Table).

The Court originally sentenced Bordon to fifty-seven months imprisonment and, *inter alia*,

fines, supervised release, and forfeiture.  *See Bordon*, 421 F.3d 1204.  The Eleventh Circuit reversed

that original sentence, holding that  Bordon's offense level was 23, not 20 as this Court had

calculated, and that this Court did not make sufficient factual findings to support a downward

departure which the Court had applied.  *See United States v. Bordon*, 228 F.3d 412 (11th Cir. 2000),

*cert. denied*, 531 U.S. 1152 (2001); [D.E. 137] in Case No. 98-0427-CR-KING/GARBER (Eleventh

Circuit's mandate and opinion); *see also, e.g.*, *Bordon*, 421 F.3d at 1204 (describing first appeal).

In July of 2001, the Court re-sentenced Bordon to ninety-seven months imprisonment as to

Count I (and, *e.g.*, fines and supervised release), and to sixty-months imprisonment as to Count II,

to be served concurrently.  *See Bordon*, 421 F.3d at 1204-05.  The Eleventh Circuit reversed in part,

holding that the Court had incorrectly interpreted the Eleventh Circuit's first opinion after the first

sentencing (*i.e.*, the Eleventh Circuit's opinion regarding the original fifty-seven month sentence of

imprisonment) to mean that the Court *lacked discretion* to consider a downward departure, when in

fact the Eleventh Circuit had only held that the Court had not cited sufficient factual findings to

support a downward departure.  *See United States v. Bordon*, 48 Fed. Appx. 326 (11th Cir. 2002)

(Table).[1]

In January of 2004, the Court re-sentenced Bordon to ninety-seven months imprisonment as

to Count I (and, *e.g.*, fines and supervised release), and to sixty-months imprisonment as to Count

II, to be served concurrently with the sentence as to Count I.  *See United States v. Bordon*, 421 F.3d

1202, 1205 (11th Cir. 2005), *rehearing* en banc *denied*, 172 Fed. Appx. 993 (11th Cir. 2006) (Table).

Bordon appealed that sentence.  Bordon filed his initial brief before the Supreme Court

---

[1]  Of course, with regards to Eleventh Circuit decisions for which this Court has cited only
(1) a "Table" listing in the Federal Reporter series of publications, (2) the style of the case, and
(3) the Eleventh Circuit's conclusion (*e.g.*, "Reversed in part, Vacated in part . . . ," 48 Fed.
Appx. 326), several of the Eleventh Circuit's unpublished opinions which correspond to those
"Table" decisions are in this Court's file for this action.  The Court has not cited all of those
unpublished opinions or referred to their docket entry numbers, however, because the parties,
based on their briefs and oral argument, apparently agree regarding the procedural background of
this action.

decided *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). He therefore obviously could not have based any argument on the *Booker* decision because the Supreme Court had not yet issued that decision. However, in this Court, in his initial appellate brief, he could have raised, but did not raise, in this Court or in his initial appellate brief an argument based on the same logic as *Booker* - just as the *Booker* appellant did - and that is particularly true because the *Booker* Court's logic was in many ways similar to the Supreme Court's rationale and holdings in, at a minimum, both *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). *See, e.g.*, *United States v. Levy*, 416 F.3d 1273, 1278-79 (11th Cir. 2005) ("Although it may be true that most attorneys could not have predicted the Supreme Court's precise resolution of the sentencing issues in *Booker*, the general agreement that the federal sentencing guidelines are unconstitutional or that a jury, not a judge, must decide the facts supporting extra-verdict sentencing enhancements was available to counsel long before *Blakely* and *Booker*."), *cert. denied*, 546 U.S. 1011 (2005); *McCoy v. United States,* 266 F.3d 1245, 1258-59 (11th Cir. 2001) ("McCoy contends that "cause" exists because the basis for his *Apprendi* claim was not known until after his conviction became final, since drug quantity was considered a mere sentencing factor until *Apprendi*. It is true that a claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default. . . However, the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all. . . . Apprendi himself raised the issue some time before his case was argued to the New Jersey appellate court in February of 1997, . . .so the building blocks for arguing it were obviously in existence as early as then. And as the other circuits to address this issue have noted, the foundation for *Apprendi* was laid years before the Supreme Court announced *Apprendi*.

. . . The fact that every circuit which had addressed the issue had rejected the proposition that became the *Apprendi* rule simply demonstrates that reasonable defendants and lawyers could well have concluded it would be futile to raise the issue. . . . That is the basis for the dissenting opinion in *United States v. Smith*, 250 F.3d 1073 (7th Cir. 2001) (Woods, J., dissenting), which the concurring opinion in this case embraces. The problem with that position is that the Supreme Court could not have been clearer that perceived futility does not constitute cause to excuse a procedural default. . . . Unless and until the Supreme Court overrules its decisions that futility cannot be cause, laments about those decisions forcing defense counsel to file kitchen sink briefs in order to avoid procedural bars . . . are beside the point.") (citations and internal quotation marks omitted).    On January 12, 2005, after Bordon had filed his initial appellate brief but before the Eleventh Circuit heard oral argument regarding Bordon's latest appeal, the Court issued its *Booker* opinion, 543 U.S. 220, 125 S. Ct. 738, in which the Court generally "held that the Federal Sentencing Guidelines, as a mandatory guidelines system, violated the Sixth Amendment right to a trial by jury by enhancing a defendant's sentence based on judicially-found facts."[2] *United States v. Gibson*, 442 F. Supp. 2d 1279, 1281 (S.D. Fla. 2006) (J. King); *see Bordon*, 421 F.3d at 1206 n.1.

Prior to oral argument, therefore, Bordon filed with the Eleventh Circuit a Notice of

---

[2] In this quotation from *Gibson*, Judge King provided an accurate, concise, general statement of the constitutional error which the *Booker* Court addressed, and this Court will discuss that constitutional error in more detail *infra*. As this Court will also discuss *infra*, the Eleventh Circuit and other courts have interpreted *Booker* to have also addressed a distinct non-constitutional error. Of course, if any portion of the relevant section of *Gibson* were inconsistent with the Eleventh Circuit's or the Supreme Court's discussions regarding the relevant issue (the undersigned does *not* believe any such inconsistency exists), then of course this Court would be bound to follow those Eleventh Circuit or the Supreme Court decisions, despite the fact that Judge King, the presiding District Judge in this action, decided *Gibson*.

Supplemental Authority in which he directed the Eleventh Circuit to the Supreme Court's *Booker* decision and argued that the Eleventh Circuit should consider Booker to be "outcome determinative" of Bordon's case.  *Bordon*, 421 F.3d at 1206 n.1.  The Eleventh Circuit and the parties "fully discussed" the *Booker* claim "at oral argument . . . ," id., and the Eleventh Circuit "recognized] that [Bordon and his sons] could readily satisfy the plain error analysis" applicable in the Eleventh Circuit because the sentencing Court:  (1) had believed that the sentence calculated in accordance with the Federal Sentencing Guidelines (which, at the time, were still binding on federal courts within the Eleventh Circuit, *see, e.g.*, *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005)) was excessive, see *Bordon*, 421 F.3d at 1206 n.1; and (2) Judge King, i.e., the *Bordon* trial Judge, "in his initial sentencing, actually departed downward on a belief that the sentence was excessive . . . ." *Id.* The Eleventh Circuit had reversed that downward departure in part because the Eleventh Circuit concluded that a district court could not depart downward from the then-mandatory Federal Sentencing Guidelines merely because the Court believed the guideline sentence was excessive.  *See id.* at 1205.

Although the Eleventh Circuit recognized that Bordon could not have cited *Booker* or raised a claim explicitly based on the *Booker* decision in his initial appellate brief because the Supreme Court had not yet decided *Booker* (although of course Bordon could have raised a *Booker*-type claim based on the same logic that the *Booker* defendant relied on before the Supreme Court decided the relevant opinion in that defendant's own case), the Eleventh Circuit refused to consider Bordon's *Booker* argument based on the "long-standing rule" that issues which an appellant does not raise in his or her initial brief are deemed abandoned.  See *Booker*, 421 F.3d at 1206 n.1; *see also, e.g.*, *United States v. Levy*, 391 F.3d 1327 (11th Cir. 2004) (*en banc*).

5

On August 25, 2005, the Eleventh Circuit affirmed.  421 F.3d 1202.

Bordon filed petitions for rehearing and rehearing *en banc*, which the Eleventh Circuit denied in January of 2006.  *See United States v. Bordon*, 172 Fed. Appx. 993 (11th Cir. 2006) (Table).

On November 9, 2006, Bordon timely filed the § 2255 Motion to which this Report and Recommendation relates.

## DISCUSSION

Bordon's claims

Construing Bordon's § 2255 Motion and related documents in a much more liberal manner than Bordon is entitled to, particularly given that he is represented by counsel, Bordon's § 2255 Motion appears to involve two ineffective-assistance-of-counsel claims, one which he raised in his § 2255 Motion and the other which he did not raise until he filed his Reply brief.  Although it is doubtful that Bordon is entitled to raise a new claim in his Reply brief, the Court can dispose of that claim very quickly, particularly because it allowed the Government to file a Sur-reply regarding Bordon's new claim in his Reply brief, and therefore the Court will assume without deciding that Bordon timely raised that claim and the Court will consider the merits of it.

Bordon's two ineffective-assistance-of-counsel claims are: (1) that his "prior attorney failed to anticipate Booker's holding, and did not include a Booker type claim in his initial brief . . . ," *i.e.,* the initial appellate brief regarding  Bordon's third appeal, in which the Eleventh Circuit did not consider his *Booker* claim because he failed to raise it in his initial brief,  § 2255 Motion [DE 285], at 4; and (2) that Bordon's appellate counsel "should have filed a motion with the Eleventh Circuit

6

requesting that the Court relinquish jurisdiction for the purpose of allowing the trial court to review its sentencing of Mr. Bordon in light of the just announced *Booker* decisions."  Defendant's Reply [DE 288], at 2.


Ineffective-assistance-of-counsel claims: standard of review and burden of proof

Bordon's two ineffective-assistance-of-counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) and its progeny.  *See, e.g.*, *Marquard v. Sec'y for Dep't of Corrections*, 429 F.3d 1278, 1304 (11th Cir. 2005).  Bordon has the burden to prove by a preponderance of the evidence both:  (1) deficient performance, i.e., "that counsel's representation fell below an objective standard of reasonableness . . . ," *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064, and (2) resulting prejudice, i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694, 104 S. Ct. at 2068; *see also, e.g.*, *Marquard*, 429 F.3d at 1304; *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).   If Bordon fails to demonstrate either deficient performance or prejudice regarding a claim, he is not entitled to relief based on that claim.  *See, e.g.*, *Michael v. Crosby*, 430 F.3d 1310, 1319 (11th Cir. 2005).

To establish deficient performance, Bordon must point to "particular and identified acts or omissions of counsel" that were "'outside the wide range of professionally competent assistance.'"  *Chandler*, 218 F.3d at 1314 (quoting *Burger v. Kemp*, 483 U.S. 776, 795, 107 S. Ct. 3114, 3126 (1987)).  That burden, although not insurmountable, "is a heavy one."  *Id.*

The Court's "scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466

U.S. at 589, 104 S. Ct. at 2065; *see also, e.g., Marquard*, 429 F.3d at 1304; *Chandler*, 218 F.3d at 1314. The Court must indulge a "strong presumption" that counsel's performance was reasonable and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90, 104 S. Ct. at 2065-66; *see also, e.g.*, *Chandler*, 218 F.3d at 1314; *Williams v. Head*, 185 F.3d 1223, 1227-28 (11th Cir. 1999).

"An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption" that counsel's performance was not deficient. *Chandler*, 218 F.3d at 1314 n.15. "Therefore, 'where the record is incomplete or unclear about [counsel]'s actions, [the Court] will presume that he did what he should have done, and that he exercised reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314 n.15 (quoting *Williams*, 185 F.3d at 1228) (first alteration in original); *see also, e.g.*, *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). Accordingly, even when testimony or evidence at a § 2255 evidentiary hearing is ambiguous, if counsel's actions or other evidence suggests that counsel's performance was reasonable, an ineffective-assistance-of-counsel claim must fail. *See, e.g.*, *Chandler*, 218 F.3d at 1314 n.15; *Waters v. Thomas*, 46 F.3d 1506, 1516 (11th Cir. 1995) (*en banc*).

The Court's inquiry is an objective one. *See, e.g.*, *Chandler*, 218 F.3d at 1315 & n.16. The Court therefore "must avoid second-guessing counsel's performance . . . ," *Chandler*, 218 F.3d at 1314, and "it does not follow that any counsel who take an approach [the Court] would not have chosen is guilty of rendering ineffective assistance." *Waters*, 46 F.3d at 1522; *see also, e.g.*, *Chandler*, 218 F.3d at 1314. Instead, in order to prove that counsel's performance was deficient, Bordon "must establish that *no competent counsel* would have taken the action that his counsel did

take."[3]  *Id.* at 1315 (emphasis added); *see also, e.g.*, *id.* at 1315 n.16; *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007); *Waters*, 46 F.3d at 1512; *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); *Harich v. Dugger*, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*).  Further, because the test is an objective one, because "[t]here are countless ways to provide effective assistance in any given case . . . ," *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Chandler*, 218 F.3d at 1315 n.16, and because "[n]o lawyer can be expected to have considered all of th[os]e ways . . . ," *Chandler*, 218 F.3d at 1315 n.16, the Court "need not attempt to divine the lawyer's mental processes underlying the strategy."  *Id.*

In reviewing counsel's performance, the Court must "eliminate the distorting effects of hindsight" and instead must "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Marquard v. Sec'y for Dep't of Corrections*, 429 F.3d 1278, 1304 (11th Cir. 2005); *Chandler v. United States*, 218 F.3d 1305, 1316

---

[3]  The Eleventh Circuit and district courts within the Eleventh Circuit have consistently and recently continued to apply this "no competent counsel" standard when assessing ineffective-assistance-of-counsel claims.  *See, e.g.*, *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006); *Saldo v. Crosby*, No. 04-15351, 2006 WL 93243, at *2 (11th Cir. Jan. 17, 2006); *Maharaj v. Sec'y for Dep't of Corrections*, 432 F.3d 1292, 1319 (11th Cir. Dec. 15, 2005); *Michael v. Crosby*, 430 F.3d 1310, 1319-20 (11th Cir. Nov. 21, 2005); *Marquard v. Sec'y for Dep't of Corrections*, 429 F.3d 1278, 1304 (11th Cir. Nov. 10, 2005); *Callahan v. Campbell*, 427 F.3d 897, 933 (11th Cir. Oct. 5, 2005); *Lewis v. Crosby*, No. 8:02CV1844T27TBM, 2006 WL 319258, at *5 (M.D. Fla. Feb. 10, 2006); *Irsula v. Sec'y, Dep't of Corrections*, No. 8:05CV1092T30TGW, 2006 WL 300613, at *1 (M.D. Fla. Feb. 8, 2006); *Evans v. United States*, No. CRIM.A. 502CR9HL, 2006 WL 149058, at *5 (M.D. Ga. Jan. 18, 2006); *United States v. Turner*, Nos. 5:02 CR 32 RH, 5:04 CV 140 RH/WCS, 2006 WL, at *3 (N.D. Fla. Jan. 4, 2006); *Dumas v. Crosby*, No. 3:04CV15/MCR/EMT, 2005 WL 3274651, at *5 (N.D. Fla. Dec. 2, 2005); *Raulerson v. Fla.*, No. 3:03CV538J-99MMH, 2005 WL 2291733, at *5 (M.D. Fla. Sept. 20, 2005); *Wright v. Crosby*, No. 8:03-CV-1698-T-17EAJ, 2005 WL 1925747, at *8 (M.D. Fla. Aug. 11, 2005); *Hayes v. Crosby*, No. 803CV931T17TBM, 2005 WL 1618213, at *3 (M.D. Fla. July 6, 2005).

(11th Cir. 2000) (*en banc*); *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*). Otherwise, it would be "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Chandler*, 218 F.3d at 1316; *Waters*, 46 F.3d at 1514. It is axiomatic, therefore, that "the fact that a particular defense proved to be unsuccessful" does not "demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314.

In applying the *Strickland v. Washington* standard, therefore, the Court "must not second-guess counsel's strategy." *Chandler*, 218 F.3d at 1314 n.14 (11th Cir. 2000); *see also, e.g.*, *Waters*, 46 F.3d at 1518-19 (11th Cir. 1995) (*en banc*). In this context, "strategy" means "trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client." *Chandler*, 218 F.3d at 1314 n.14. Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, so long as the approach taken 'might be considered sound trial strategy.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting *Darden v. Wainwright*, 477 U.S. 168, 186-87, 106 S. Ct. 2464, 2474 (1986)).

Additionally, "[c]ounsel is not required to present every nonfrivolous defense"; is not required to make every non-frivolous argument; and is not required to present all evidence, even if that evidence would have been compatible with the defendant's and counsel's strategy. *Chandler*, 218 F.3d at 1319; *see also, e.g.*, *Marquard*, 429 F.3d at 1305; *Waters*, 46 F.3d at 1511; *Rogers v. Zant*, 13 F.3d 384, 388 (11th Cir. 1994). "Considering the realities of the courtroom, more is not always better. Stacking defenses can hurt a case. Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others." *Chandler*, 218 F.3d at 1319; *see also*,

*e.g.*, *Marquard*, 429 F.3d at 1305; *Waters*, 46 F.3d at 1512 ("There is much wisdom for trial lawyers in the adage about leaving well enough alone."); *Rogers*, 13 F.3d at 388 ("To avoid being branded ineffective, defense lawyers need not assert every nonfrivolous defense.  We have accepted in earlier cases that stacking different defenses can undercut with the jury the defense team's credibility, which is essential to a likelihood of success."); *id.* ("And, as the Supreme Court has stressed, we know good advocacy requires the winnowing out of some arguments in favor of stressing others: multiplicity of arguments or defenses hints at the lack of confidence in any one.") (citing *Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S. Ct. 3308, 3313 (1983)).

To establish prejudice, Bordon "must 'affirmatively prove prejudice' by showing that counsel's errors "actually had an adverse effect on the defense."" *Brownlee v. Hayley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067).  "This requires a showing of more than 'some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067).  Instead, Bordon "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

<u>*Booker* and its progeny</u>

Because Bordon's claims are based on *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (Jan. 12, 2005), the Court will briefly discuss that decision and its progeny.

In *Booker* and its progeny, the Supreme Court and Eleventh Circuit (and other federal

appellate courts and federal district courts, including this Court) have discussed two types of sentencing errors which the *Booker* facts and the *Booker* Court's legal discussion implicated: (1) errors based on the United States constitution, and (2) errors based on federal statutes.  *See, e.g.*, *Odili v. United States Parole Comm'n*, 474 F.3d 1255, 1264 (11th Cir. 2007); *United States v. Houston*, 456 F.3d 1328, 1339 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2148 (2007); *United States v. Alvarez*, 164 Fed. Appx. 893, 894-95 (11th Cir. 2006); *United States v. Mathenia*, 409 F.3d 1289, 1291 (11th Cir. 2005); *United States v. Shelton*, 400 F.3d 1325, 1331 (11th Cir. 2005); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir.), *cert. denied*, 545 U.S. 1127 (2005); *see also, e.g.*, *United States v. Gibson*, 442 F. Supp. 2d 1279, 1281 (S.D. Fla. 2006) (J. King) ("In *Booker*, the Supreme Court held that the Federal Sentencing Guidelines, as a mandatory guidelines system, violated the Sixth Amendment right to a trial by jury by enhancing a defendant's sentence based on judicially-found facts.").

*Booker* constitutional error occurs when "'the Sixth Amendment right to trial by jury is violated where *under a mandatory guidelines system* a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury."[4] *United States v. Smith*, 480 F.3d 1277, 1281 (11th Cir. 2007) (quoting *Rodriguez*, 398

---

[4]  As that quotation from *United States v. Smith* demonstrates, *Booker* constitutional error is premised on the Sixth Amendment. *See, e.g.*, *Smith*, 480 F.3d at 1281. Some criminal defendants have unsuccessfully argued that *Booker* error also arises under other amendments, particularly the Fifth Amendment. *See, e.g.*, *United States v. Correa*, No. 07-11281, 2007 WL 2983882, at *1 (11th Cir. Oct. 15, 2007) ("On appeal, Rodriguez-Correa raises five arguments: 1) that his Fifth and Sixth Amendment rights were violated where the district court used his prior convictions that were not alleged in the indictment or proven to a jury beyond a reasonable doubt to enhance his sentence; . . . First, Rodriguez-Correa argues that his Fifth and Sixth Amendment rights were violated where the district court used his prior convictions that were not alleged in the indictment or proven to a jury beyond a reasonable doubt to enhance his sentence. . . . He

F.3d at 1298), *cert. denied*, --- S. Ct. ----, 2007 WL 1750209 (U.S. Oct. 1, 2007) (No. 06-11901));

*see also, e.g.*, *Odili v. United States Parole Comm'n*, 474 F.3d 1255, 1264 (11th Cir. 2007); *United States v. Houston*, 456 F.3d 1328, 1339 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2148 (2007); *Rodriguez*, 398 F.3d at 1301 (*Booker* "constitutional error is the use of extra-verdict enhancements to reach a guidelines result that is binding on the sentencing judge.").

*Booker* statutory error, on the other hand, occurs when "when the judge treats the sentencing guidelines as binding for sentencing purposes, regardless of the sentence imposed." *Odili v. United States Parole Comm'n*, 474 F.3d 1255, 1264 (11th Cir. 2007); *see also, e.g.*, *United States v. Houston*, 456 F.3d 1328, 1339 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 2148 (2007). *Booker* statutory error may occur even in the absence of a *Booker* constitutional error. *See, e.g.*, *United States v. Alvarez*, 164 Fed. Appx. 893, 894-95 (11th Cir. 2006) ("Statutory *Booker* error occurs when the district court misapplies the guidelines by considering them as binding 'even in the absence of a Sixth Amendment enhancement violation.'") (quoting *United States v. Shelton*, 400 F.3d 1325, 1330-31 (11th Cir. 2005)).

Although at least some of the following propositions may be only *indirectly* relevant to Bordon's § 2255 Motion, all are useful for placing *Booker* in its appropriate context and for understanding the limitations of that decision, which Bordon and many other criminal defendants

---

acknowledges that his argument is foreclosed by this Court's precedent, but raises the claim to preserve it for further appellate review." ); *United States v. McMillan*, No. 07-10985, 2007 WL 2709935, at *1 (11th Cir. Sept. 18, 2007) ("McMillan also contends that the district court's consideration of the drug quantities from dismissed charges to set his base offense level without a finding by a jury applying a beyond-a-reasonable-doubt standard violates the Fifth and Sixth Amendments. McMillan acknowledges that this contention is contrary to this Court's previous rulings.").

attempt to apply incorrectly to their cases.

*Booker* does not affect sentences applied by a court which properly treated the Federal Sentencing Guidelines as advisory and not binding, and which then relied on evidence, *even evidence which was not presented at trial and which the jury did not hear or see* (such as undisputed statements in the pre-sentence investigative report, statements in the Government's plea colloquy to which a defendant does not object, and/or evidence presented at a sentencing hearing), to conclude *by a preponderance of the evidence* that facts exist which warranted enhancement of the defendant's sentence.  *See, e.g.*, *United States v. Smith*, 480 F.3d 1277, 1281 (11ᵗʰ Cir. 2007), *cert. denied*, --- S. Ct. ----, 2007 WL 1750209 (U.S. Oct. 1, 2007) (No. 06-11901); *United States v. Chau*, 426 F.3d 1318, 1322-23 (11ᵗʰ Cir. 2005); *id.* at 1323 ("As we have explained, 'all nine [justices] agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional.'") (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11ᵗʰ Cir.), *cert. denied*, 125 S. Ct. 2935 (2005)) (alteration in original); *United States v. Shelton*, 400 F.3d 1325, 1330-31 (11ᵗʰ Cir. 2005); *Rodriguez*, 398 F.3d at 1300 ("No part of the [Sentencing Reform] Act or guidelines concerning extra-verdict enhancements was excised or modified by the *Booker* decision.  The same extra-verdict enhancement provisions apply after *Booker* as before."); *id.* at 1301 ("The problem with the reasoning is that, as we have already discussed, both majority opinions in *Booker* make clear that the decisive factor that makes pre-*Booker* sentencing problematic *is not extra-verdict enhancements but their use in a mandatory guidelines system*.  Indeed, all nine Justices joined one or both of those opinions, so all nine agreed that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional.") (emphasis added); *United States v. Polar*, 369 F.3d 1248, 1255 (11ᵗʰ Cir. 2005).

14

Collateral review and *Booker*

To the extent Bordon raises a substantive *Booker* claim, as opposed to a constitutional claim

that his counsel rendered ineffective assistance by failing to take certain steps to bring *Booker* to the

Eleventh Circuit's or this Court's attention before his appeal was final, he may not raise that claim

on collateral review.  *See, e.g.*, *Griffin v. Wiley*, 141 Fed. Appx. 843, 845 (11th Cir. 2005), *cert.*

*denied*, 546 U.S. 1215 (2006); *Varela v. United States*, 400 F.3d 864, 867-68 (11ᵗʰ Cir.), *cert.*

*denied*, 546 U.S. 924 (2005).

Bordon's first claim

Bordon's first ineffective-assistance-of-counsel claim - and as this Court discussed *supra*, the

only one he actually raised in his § 2255 Motion - is that his "prior attorney failed to anticipate

*Booker*'s holding, and did not include a *Booker* type claim in his initial brief . . . ," *i.e.*, the initial

appellate brief regarding  Bordon's third appeal, in which the Eleventh Circuit did not consider his

*Booker* claim because he had failed to raise it in his initial brief.  *See* § 2255 Motion [DE 285], at 4.

Bordon's counsel's performance in failing to "anticipate *Booker*'s holding" and therefore

failing to "include a *Booker* type claim in his initial brief" regarding his third appeal, *see* § 2255

Motion [DE 285], at 4, does not constitute deficient performance which could support Bordon's

ineffective-assistance-of-counsel claim, particularly in light of the fact that at that time the Supreme

Court's eventual holding in *Booker* was contrary to then-current Eleventh Circuit law,.  *See, e.g.,*

*United States v. Vanorden*, 414 F.3d 1321, 1323 n.1 (11th Cir.2005) ("This omission is certainly

understandable in that neither *Blakely* nor *Booker* had been decided, and then-controlling circuit

precedent held that the Sixth Amendment right to a trial by jury, as explicated in *Apprendi*, 'ha[d] no application to, or effect on, . . . Sentencing Guidelines calculations, when . . . the ultimate sentence imposed does not exceed the prescribed statutory maximum penalty,' . . . .") (quoting *United States v. Sanchez*, 269 F.3d 1250, 1288 (11th Cir. 2001) (*en banc*)) (alteration in original), *cert. denied*, 126 S. Ct. 633 (2005); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001) (describing "a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel"); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) ("We have held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop."); *United States v. Benveniste*, Nos. CRIM.A. 101CR0761JOF & Civ.A. 105CV1074JOF, 2006 WL 269969, at *4 (N.D. Ga. Feb. 4, 2006); *Diaz v. United States*, Nos. 2:05-CV-2-FTM-29 & 2:02-CR-60-FTM-29,2005 WL 3467523, at *9 (M.D. Fla. Dec. 19, 2005), *certificate of appealability denied*, 2006 WL 118285 (M.D. Fla. Jan. 16, 2006); *Aird v. United States*, 339 F. Supp. 2d 1304, 1312-13 (S.D. Ala. 2004) ("As a matter of law, the *Blakely* ruling cannot give rise a viable claim of ineffective assistance of counsel based on trial or appellate counsel's failure to object to events that *Blakely* may have rendered unconstitutional years later."[5]).

---

[5] In *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), a decision in which the Supreme Court considered a State's sentencing guidelines, the Court foreshadowed its future decision in *Booker*, but that does not change the fact that until the Supreme Court decided *Booker*, the Eleventh Circuit and most or all other Circuits had concluded that *Blakely* did *not* apply to the Federal Sentencing Guidelines. The two decisions are so closely related, however, that when a federal prisoner raises a *Blakely* claim but does not explicitly rely on *Booker*, the Eleventh Circuit nevertheless construes the claim to be based on *Booker*. *See, e.g.*, *United States v. Daniel*, 148 Fed. Appx. 833, 835 n.3 (11th Cir. 2005) ("This court now reviews *Blakely* arguments under *Booker*."); *United States v. Lee*, 427 F.3d 881, 891 (11th Cir. 2005); *United States v. Levy*, 416 F.3d 1273, 1279 (11th Cir.), *cert. denied*, 126 S. Ct. 643 (2005).

Because Bordon's former counsel's actions were not constitutionally ineffective, Bordon is not entitled to relief based on his first claim.

Bordon's second claim

Bordon's second claim, which, as the Court discussed *supra*, he did not raise in his § 2255 Motion but instead first raised in his Reply memorandum, is that his appellate counsel "should have filed a motion with the Eleventh Circuit requesting that the Court relinquish jurisdiction for the purpose of allowing the trial court to review its sentencing of Mr. Bordon in light of the just announced *Booker* decisions."   Defendant's Reply [DE 288], at 2.

As this Court discussed *supra*, after Bordon filed his initial appellate brief but before the Eleventh Circuit heard oral argument regarding Bordon's latest appeal, the Supreme Court decided *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (Jan. 12, 2005).   Prior to oral argument, therefore, Bordon filed with the Eleventh Circuit a Notice of Supplemental Authority in which he directed the Eleventh Circuit to the Supreme Court's decision in *Booker* and argued that the Eleventh Circuit should consider *Booker* to be "outcome determinative" of Bordon's case.   *Bordon*, 421 F.3d at 1206 n.1.   The Eleventh Circuit and the parties "fully discussed" the *Booker* claim "at oral argument . . . ," *id.*, and the Eleventh Circuit "recognize[d] that [Bordon and his sons] could readily satisfy the plain error analysis" applicable in the Eleventh Circuit because the District Judge who imposed the sentence:  (1) believed that the sentence was calculated in accordance with the Federal Sentencing Guidelines (which, at the time, were still binding on courts within the Eleventh Circuit, *see, e.g.*, *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005)) was excessive, *see Bordon*,

421 F.3d at 1206 n.1; and (2) that court, *i.e.*, the *Bordon* trial court, "in [its] initial sentencing, actually departed downward on a belief that the sentence was excessive . . . ." *Id.* The Eleventh Circuit had reversed that downward departure in part because the Eleventh Circuit concluded that a district court could not depart downward from the (then-mandatory) Federal Sentencing Guidelines merely because it believed the Guideline sentence was excessive. *See id.* at 1205.

Although the Eleventh Circuit recognized that Bordon could not have cited *Booker* or raised a claim based on *Booker* in his initial appellate brief because the Supreme Court had not yet decided *Booker* (although of course Bordon could have raised a *Booker*-type claim, just as the *Booker* defendant did before the Supreme Court decided the relevant opinion in that defendant's own case, *see, e.g*, *United States v. Levey* 416 F.3d 1273, 1278-79 (11th Cir.), *cert. denied*, 546 U.S. 1011 (2005), the Eleventh Circuit refused to consider Bordon's *Booker* argument based on the "long-standing rule" that issues which an appellant does not raise in his or her initial brief are deemed abandoned. *See Booker*, 421 F.3d at 1206 n.1; *see also, e.g.*, *United States v. Levy*, 391 F.3d 1327 (11th Cir. 2004).

The Eleventh Circuit affirmed. *See* 421 F.3d 1202. Bordon's counsel then filed petitions for rehearing and rehearing *en banc*, which the Eleventh Circuit denied in January of 2006. *See United States v. Bordon*, 172 Fed. Appx. 993 (11th Cir. 2006) (Table).

Bordon's counsel's actions do not come even remotely close to the level of deficient performance which would satisfy the first prong of the *Strickland* test. Even assuming that Bordon's suggested approach (*i.e.*, that his appellate counsel "should have filed a motion with the Eleventh Circuit requesting that the Court relinquish jurisdiction for the purpose of allowing the trial court to

18

review its sentencing of Mr. Bordon in light of the just announced *Booker* decisions . . . ,"

Defendant's Reply [DE 288], at 2) - would have constituted sound strategy, or even *better* strategy

than the approach Bordon's counsel took, those facts are insufficient to establish deficient

performance.  "There are countless ways to provide effective assistance in any given case . . . ,"

*Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065 (1984); *see also, e.g.*, *Chandler*

*v. United States*, 218 F.3d 1305, 1313, 1315 n.16 (11th Cir. 2000) (*en banc*), and because "[n]o

lawyer can be expected to have considered all of th[os]e ways . . . ," *Chandler*, 218 F.3d at 1315

n.16, the Court "need not attempt to divine the lawyer's mental processes underlying the strategy."

*Id.*

　　Even though Bordon's own counsel, Mr. Weintraub, testified at the evidentiary hearing that

he believed he had made a mistake in not pursuing an alternative method of raising the *Booker* issue,

the Court's inquiry is an *objective* one, *see, e.g.*, *Chandler*, 218 F.3d at 1315 & n.16; *Waters v.*

*Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*), and therefore, as odd as the proposition may

seem at first blush, even Mr. Weintraub's own testimony regarding his *subjective* belief that he erred

is insufficient to establish deficient performance pursuant to *Strickland*; and contrary to that portion

of Mr. Weintraub's testimony during the evidentiary hearing in this § 2255 proceeding, the record

reflects that Mr. Weintraub's representation of Mr. Bordon was not only objectively reasonable, but

was outstanding. In fact, even with respect to the *Booker* issue and in light of the late point of the

proceedings at which the Supreme Court decided *Booker*, Mr. Weintraub's attempts to obtain relief

based on *Booker* were also outstanding; so outstanding, in fact, that Judge Hill, one of the three

Judges on the Eleventh Circuit panel, concurred with the panel's conclusion with what he explicitly

stated was a "lack of enthusiasm" and reluctance, *see Bordon*, 421 F.3d at 1208 (J. Hill, concurring)

19

("With lack of enthusiasm, I concur."); *id.* at 1209 ("I reluctantly concur.").   And perhaps more importantly do demonstrate the objective reasonableness of Bordon's counsel's actions, Judge Hill, even with the benefit of hindsight that Bordon's former counsel did not have, at least implied that he was unaware of any method in the Eleventh Circuit to correct an erroneous sentence under circumstances such as those which arose in this action, *i.e.*, by virtue of the Supreme Court having decided *Booker after* the parties filed their briefs but *before* oral argument.  *See id.* at 1208 ("I should like to think that a court would want to correct an erroneous sentence of incarceration - if an efficient and prudential method could be devised to do so.  We must feel that we cannot.  Yet, the other circuits in this country seem to be doing so - and surviving!").

As this Court discussed *supra*, in reviewing counsel's performance, the Court must "eliminate the distorting effects of hindsight" and instead must "evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Marquard v. Sec'y for Dep't of Corrections*, 429 F.3d 1278, 1304 (11th Cir. 2005); *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (*en banc*); *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (*en banc*).   Otherwise, it would be "all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *see also, e.g.*, *Chandler*, 218 F.3d at 1316; *Waters*, 46 F.3d at 1514.  It is axiomatic, therefore, that "the fact that a particular defense proved to be unsuccessful" does not "demonstrate ineffectiveness."  *Chandler*, 218 F.3d at 1314.

Bordon's counsel's chosen method for attempting to obtain relief based on *Booker*, particularly when viewed from counsel's perspective - *e.g.*, the fact that the Supreme Court did not issue the *Booker* opinion until after the parties had filed their briefs and soon before oral argument -

and in light of the speed with which he had to make such important decisions, his conduct certainly was within the wide range of decisions competent counsel could make in a similar or identical situation.

In fact, as the Court discussed *supra*, even Judge Hill, with the benefit of hindsight that Bordon's former counsel did not have, still appeared to be unable to suggest an alternative method by which Bordon could have obtained relief based on *Booker*, given the procedural posture of Bordon's appeal at the time the Supreme Court issued its *Booker* decision.  Additionally, even Bordon's current counsel *did not raise this issue in Bordon's § 2255 Motion*, and in that § 2255 Motion he did not suggest the alternative method which he now claims it was constitutionally deficient for Bordon's former counsel not to pursue.  Additionally, Bordon's former counsel failed to make that argument in the § 2255 Motion despite the fact that he had very significant "advantages" which would have made it much easier for him to identify the suggested approach than it would have been for Bordon's former counsel to identify that approach during the appeal:  when Bordon's current counsel filed that § 2255 Motion, he had the benefits of a significant amount of time to prepare, considerable hindsight, and Judge Hill's concurring opinion, none of which Bordon's former counsel had the benefit of at the time relevant to Bordon's claim.  Although this Court would conclude with confidence that Bordon's former counsel's performance was not deficient even if Judge Hill had not written that concurrence and even if Bordon's current counsel had raised the relevant argument in Bordon's § 2255 Motion instead of in Bordon's Reply, those are two additional facts which seem to make it difficult, if not impossible, for Bordon's current counsel to argue "that *no competent counsel* would have taken the action that [Bordon's former] counsel did take" and/or that *no competent counsel* would have failed to take the action that Bordon's former counsel failed to

21

take.[6] *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (*en banc*) (emphasis added); *see also, e.g.*, *id.* at 1315 n.16; *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007); *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006); *Maharaj v. Sec'y for Dep't of Corrections*, 432 F.3d 1292, 1319 (11th Cir. 2005); *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*); *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); *Harich v. Dugger*, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*).

Because Bordon's former counsel's actions were not constitutionally ineffective, Bordon is not entitled to relief based on his second argument.

## <u>RECOMMENDATION</u>

For the foregoing reasons, it is respectfully recommended that the Court DENY Luis Adel Bordon's ("Bordon") Motion to Vacate, Set Aside, and Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 285].

---

[6] It appears that the only way Bordon's current counsel can make that argument is to concede that he rendered deficient performance by failing to raise the argument in Bordon's § 2255 Motion (although it could not have been *constitutionally deficient* performance because this is a § 2255 Motion, and the Constitution does not guarantee § 2255 movants the right to *any* counsel, let alone counsel subject to the *Strickland v. Washington* standard) and instead raising it for the first time in Bordon's Reply, particularly given the fact that the Court likely has the discretion to decline to consider the issue because Bordon's counsel did not raise it in the § 2255 Motion.

Similarly, it appears that the only way Bordon's counsel can make that argument is to argue that Judge Hill's concurrence in the August 25, 2005, *Bordon* opinion is so infirm that if a lawyer accepted and relied on the opinions which Judge Hill expressed in that concurrence, that lawyer would be taking an approach that *no reasonable lawyer* would take, which would also seem to suggest that Judge Hill's conclusion in that regard was unreasonable. That conclusion would be particularly ironic in light of the fact that in the § 2255 Motion, Bordon's current counsel relied on Judge Hill's concurrence (which he mistakenly labeled a "dissent") to support Bordon's position, *see* [D.E. 285], at 3, and it is difficult to imagine he would rely on a concurrence that he thought was so infirm by virtue of its author's failure to identify the appropriate procedure for obtaining review of Bordon's case in light of *Booker*..

The parties have ten (10) days from the date of service of this Report and Recommendation to file written objections, if any, with the Honorable James Lawrence King, United States District Judge. *See* 28 U.S.C. § 636. Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained in this Report and Recommendation. *See LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 1st day of November, 2007.

BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE